UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VALENTIN JEAN-LOUIS,

        Plaintiff,

     -against-

AMERICAN AIRLINES,

        Defendant.
-------------------------------------------------------------X

Memorandum &
Order
08-CV-3898 (FB)

GOLD, S., *United States Magistrate Judge*:

  Plaintiff brings this action against American Airlines ("American"), his former employer, pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.*, New York State Executive Law § 296 ("NYSHRL") and New York City Administrative Code § 8-107 ("NYCHRL").[1] Plaintiff now seeks to amend his complaint to add two individual defendants, to add a discrimination claim pursuant to 42 U.S.C. § 1981 and to bring claims for tortious interference with employment relations and negligent infliction of emotional distress. Plaintiff's Motion to File an Amended Complaint ("Pl. Mem.") 1, Docket Entry 31. Defendant opposes the motion on the ground that plaintiff's proposed amendments are futile.[2] Defendant's Opposition to the Plaintiff's Motion to Amend ("Def. Mem.") 1, Docket Entry 33. The Honorable Frederic Block has referred the motion to me to decide.[3] Electronic Order dated Oct.

---

[1] Plaintiff originally brought claims against TWU Local 501, but these claims have been dismissed. *See* Electronic Order dated Oct. 16, 2009.

[2] Defendant does not oppose plaintiff's amendment to add a claim against American pursuant to 42 U.S.C. § 1981. Def. Mem. 1 n.1.

[3] A magistrate judge has the authority to decide a motion to amend pursuant to 28 U.S.C. § 636(b)(1)(A). Although the Second Circuit has not specifically addressed whether a magistrate judge has such authority, the weight of the authority in this Circuit is that a motion to amend is non-dispositive. *See N. Assurance Co. of Am. v. Square D. Co.*, 201 F.3d 84, 86 (2d Cir. 2000) (noting that the magistrate judge had decided the motion to amend without questioning the magistrate judge's authority to do so); *Rubin v. Valicenti Advisory Servs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007); *Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*, 2005 WL 883485 (S.D.N.Y. Apr. 14, 2005); *Credit Suisse First Boston LLC v. Coeur d'Alene Mines Corp.*, 2005 WL 323714, at *2-3 (S.D.N.Y. Feb. 10, 2005); *Vandewalker v. Quandt's Food Serv. Distribs., Inc.*, 934 F. Supp. 42, 48 (N.D.N.Y. 1996). Thus,

22, 2009. For the reasons that follow, plaintiff's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff, a Haitian black male, was employed by American in the Fleet Service division from March, 1999 until November, 2007. Am. Compl. ¶¶ 10, 17, 18.[4] Relevant to his motion, plaintiff alleges that a fellow Crew Chief, Steve Zografos, a white male, physically assaulted plaintiff on or about April 13, 2007. *Id*. ¶ 29. More specifically, Jean-Louis contends that he and Zografos exchanged heated words that included Zografos calling plaintiff a "faggot" and, after plaintiff responded that he "cannot be a faggot because he was with [Zografos'] mother last night," Zografos telling plaintiff that "My mother would never date a black guy." *Id*. Approximately ten to fifteen minutes after that, Zografos punched plaintiff in the face and head. *Id*. ¶ 30. Jean-Louis alleges that he required medical treatment for the injuries that resulted from Zografos' assault. *Id*. Plaintiff subsequently reported the incident to Anthony Gallo, his supervisor, a white male, who took no action against Zografos and told Jean-Louis to "get used to it, it's a white world." *Id*. ¶ 31. American then suspended plaintiff for having physical contact with another employee based on the April, 2007 incident with Zografos, although Zografos was not disciplined in any way for the incident. *Id*. ¶ 33. American subsequently terminated plaintiff's employment. *Id*. ¶ 40.

## DISCUSSION

A party may amend its pleading by leave of court, which should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). A district court, however, has discretion to deny leave to amend in appropriate circumstances, including where the amendment would be "futile."

---

the "clearly erroneous or contrary to law" standard set forth in Federal Rule of Civil Procedure 72(a) governs any objections to this Order.

[4] "Am. Compl." refers to plaintiff's proposed amended complaint, Pl. Mem. Ex. A, Docket Entry 31-1.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("One appropriate basis for denying leave to amend is that the proposed amendment is futile."); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman*, 371 U.S. at 182). An amendment is considered futile if, for example, it could not defeat a motion to dismiss for failure to state a claim. *See Riccuiti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Thus, whether considered in the context of a motion to dismiss or opposition to a motion for leave to amend, the viability of a claim is evaluated by the same legal standard.

When considering whether plaintiff has stated a claim, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). However, a pleading must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Allegations that "are no more than conclusions are not entitled to the assumption of truth." *Id*.

As noted above, plaintiff seeks to add three claims and to add two individual defendants – Zografos and Gallo. Each of plaintiff's proposed amendments is addressed in turn below.

    *A.*    *Tortious Interference with Employment Relations*

Plaintiff proposes to bring a claim of tortious interference with employment relations against Zografos. Am. Compl. ¶ 83; Pl. Mem. 10. A plaintiff claiming tortious interference under New York law must establish four elements: 1) a valid contract, 2) knowledge by a third party of the contract, 3) conduct by the third party to intentionally and improperly procure the breach of the contract, and 4) damage to the plaintiff as a result of the breach. *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001). At-will employees, like plaintiff here, however, do not have

employment contracts.[5] *Id.* Nonetheless, an at-will employee may establish a claim for tortious interference but only if the defendant engaged in fraud or misrepresentation, made threats, or acted with malice. *Id.*; *see also Dooley v. Metro. Jewish Health Sys.*, 2003 WL 22171876, at *12 (E.D.N.Y. July 30, 2003); *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 194 (1980); *but see McCormick v. Chase*, 2007 WL 2456444, at *2 (S.D.N.Y. Aug. 29, 2007) (dismissing plaintiff's tortious interference claim after concluding that New York does not recognize such a cause of action for at-will employees).

Plaintiff's proposed amended complaint fails to allege that Zografos maliciously caused plaintiff to be fired or that Zografos threatened or defrauded plaintiff. *See*, *e.g.*, Am. Compl. ¶¶ 17-42, 85. In fact, the complaint does not allege that Zografos had any role in the decision to fire plaintiff. Accordingly, plaintiff's motion to add a claim of intentional interference with employment relations is denied as futile.

### B. *Negligent Infliction of Emotional Distress*

Plaintiff seeks to add a claim of negligent infliction of emotional distress against all defendants based on the alleged assault by Zografos. Am. Compl. ¶ 87; Pl. Mem. 10. American contends that plaintiff's proposed claim of negligent infliction of emotional distress is barred by New York's Workers' Compensation statute, N.Y. WORKERS' COMP. LAW § 29(6), which provides that the statute "shall be the exclusive remedy to an employee . . . injured . . . by the

---

[5] In general, "New York law provides for employment at will." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 174 (S.D.N.Y. 2003). However, there is some indication in the parties' papers, that plaintiff's employment was governed by a Collective Bargaining Agreement ("CBA"). *See*, *e.g.*, Def. Mem. 4. To the extent plaintiff's employment was covered by a CBA, his claim for tortious interference with employment relations might be preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), *see Anderson v. Aset Corp.*, 329 F. Supp. 2d 380, 383 (W.D.N.Y. 2004), *aff'd* 416 F.3d 170, 171-72 (2d Cir. 2005); *see also Arnold v. Beth Abraham Health Servs., Inc.*, 2009 WL 5171736 (S.D.N.Y. Dec. 30, 2009) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)), or the Railway Labor Act ("RLA"), 29 U.S.C. § 145 *et seq.* Def. Mem. 4-5. The preemption standard under the LMRA and the RLA is the same – "[t]he relevant issue . . . is whether the resolution of a state-law claim depends on an interpretation of the CBA." *Wilds*, 262 F. Supp. 2d at 182 n.12 (internal quotation marks omitted). Because plaintiff fails to state a valid tortious interference claim for reasons apart from whether or not he was an at-will employee, I do not reach the preemption issue.

negligence or wrong of another in the same employ."

Courts routinely dismiss workplace negligence claims, including claims based on harassment and infliction of emotional distress, in light of the exclusive remedy provision of the Workers' Compensation statute. *See*, *e.g.*, *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001); *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997); *Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 554 (S.D.N.Y. 2008) (citing *Burlew v. Am. Mutual Ins. Co.*, 63 N.Y.2d 412, 416-17 (1984)); *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 666 (S.D.N.Y. 2007); *Thomas v. Ne. Theatre Corp.*, 51 A.D.3d 588, 589 (1st Dep't 2008). In addition, a claim of *negligent* infliction of emotional distress based on *intentional* conduct is not a viable cause of action. *See Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000) ("When a plaintiff brings . . . assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."); *Universal Calvary Church v. City of New York*, 2000 WL 1745048, at *12 (S.D.N.Y. Nov. 28, 2000) (noting that "once intentional conduct causing . . . injury has been established, the actor is liable for assault and battery and not negligence"). Accordingly, plaintiff's motion to add a claim of negligent infliction of emotional distress is also denied as futile.

C. Section 1981

Plaintiff seeks to add a claim alleging a violation of § 1981 against all defendants.[6] In his proposed amended complaint, Jean-Louis simply alleges that "the defendants discriminated against plaintiff on account of his race in violation of Section 1981." Am. Compl. ¶ 83. Earlier in the complaint, however, plaintiff states that this "action is brought to remedy discrimination,

---

[6] As noted above, defendant does not oppose plaintiff's proposed § 1981 claim asserted against American, but does oppose the claim with respect to the individual defendants.

hostile work environment and harassment on the basis of race/color, national origin and retaliation in the terms, conditions, and privileges of employment under Section 1981. . . ." *Id*. ¶ 1. Accordingly, I construe plaintiff's application to include § 1981 claims based on discrimination, retaliation, and a hostile work environment suffered on account of his race, color, and national origin.

Section 1981 provides, *inter alia*, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). This section prohibits race-based "discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004). At-will employees, such as plaintiff, have contractual rights that may be enforced through § 1981. *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 260-61 (2d Cir. 2000); *Olumuyiwa v. Harvard Prot. Servs., Inc.*, 2000 WL 620202, at *4 (E.D.N.Y. May 12, 2000). Section 1981, however, does not prohibit discrimination based on national origin. *Gad-Tadros v. Bessemer Venture Partners*, 326 F. Supp. 2d 417, 424 (E.D.N.Y. 2004) (citing *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987)). Accordingly, plaintiff may not bring a § 1981 claim based solely on his national origin.

Defendant contends that plaintiff's proposed § 1981 claim based on race is futile for two reasons. First, defendant argues that § 1981 does not permit individual liability against a coworker, such as Zografos. Def. Mem. 7-8. Second, defendant argues that plaintiff's complaint fails to allege sufficient facts to establish a hostile work environment under § 1981. *Id*. at 8-11.

### 1. Individual Liability under § 1981

"In order to make out a claim for individual liability under § 1981, a plaintiff must

demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (internal quotation marks omitted). "The burden for pleading individual liability under § 1981 is not high." *Hooda v. Brookhaven Nat'l Lab.*, 659 F. Supp. 2d 382, 391 (E.D.N.Y. 2009). However, individual liability is generally imposed only on those who "have the capacity to make and enforce the contract between the employer and the employee," such as "supervisors who were personally involved in the discriminatory activity." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 2008 WL 1809323, at *1 (W.D.N.Y. Apr. 21, 2008) (citing *Hicks v. IBM*, 44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999)).

Nonetheless, there is a split in authority over whether a coworker can be held liable under § 1981. Some courts have been reluctant to find coworker liability because it is often difficult to establish a causal link between a coworker's discriminatory conduct and the adverse employment action giving rise to a plaintiff's claim. *See*, *e.g.*, *Williams v. Morgan Stanley & Co., Inc.*, 2009 WL 799162, at *9 (E.D. Mich. Mar. 24, 2009) (collecting cases and holding that plaintiff cannot assert a § 1981 claim against individuals who lack supervisory authority); *Miller v. Wachovia Bank, N.A.*, 541 F. Supp. 2d 858, 863-65 (N.D. Tex. 2008) (canvassing decisions from several federal circuits and declining "to expand the scope of § 1981 liability to encompass claims against mere coworkers" and reasoning that "because those employees who are neither supervisors nor exercise supervisory authority are not in a position to act on behalf of the employer to make and enforce the company's employment contracts, it would be inconsistent with the language of § 1981 itself to permit plaintiffs to recover against them"); *Covalt v. Pintar*, 2008 WL 2312651, at *6-7 (S.D. Tex. June 4, 2008) (noting that the extent of individual liability under § 1981 was an open question in the Fifth Circuit and dismissing plaintiff's § 1981

claim against a coworker).

On the other hand, the Second Circuit has specifically held that a coworker's direct participation in creating a hostile work environment is sufficient to establish individual liability under § 1981. *Patterson*, 375 F.3d at 229 (reversing district court's grant of summary judgment in favor of individual defendants who created hostile work environment). Following *Patterson*, courts in this Circuit have permitted § 1981 claims of individual liability against coworkers where they participated in conduct that created a hostile work environment. *See*, *e.g.*, *Doe v. City of New York*, 583 F. Supp. 2d 444, 450 (S.D.N.Y. 2008) (finding that plaintiff sufficiently alleged individual liability against coworker who made discriminatory comments both orally and in emails, thereby creating a hostile work environment); *Brown v. New York State Dep't of Corr. Servs.*, 583 F. Supp. 2d 404, 411 (W.D.N.Y. 2008) (holding that plaintiff stated a § 1981 claim against coworkers who allegedly harassed him because of his race); *Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 2d 404, 411-12 (E.D.N.Y. 2006) (finding sufficient allegations in the complaint to state a claim for individual coworker liability where coworker was responsible for the harassing conduct); *see also Callahan v. Consol. Edison Co. of N.Y., Inc.*, 187 F. Supp. 2d 132, 137 (S.D.N.Y. 2002) (finding that plaintiff alleged sufficient facts to suggest that her subordinate contributed to the hostile work environment and thus may be individually liable under § 1981); *Evans v. Port Auth. of N.Y. & N.J.*, 2002 WL 77074, at *2 (S.D.N.Y. Jan. 22, 2002) ("assum[ing] arguendo that an individual co-worker who engages [in] racially motivated harassment sufficient to create a hostile work environment may be held liable under Section 1981"); *Olumuyiwa*, 2000 WL 620202, at *5 (holding that "a third party may be liable under § 1981 if that party intentionally interferes, on the basis of race, with another's right to make and enforce contracts, regardless of whether the employer or anyone else may also be liable")

(internal quotation marks omitted). Accordingly, Zografos may be held liable under § 1981 if his actions contributed to creating a hostile work environment.

## 2. *Hostile Work Environment*

The next question is whether plaintiff pleads sufficient facts to establish a claim of a racially hostile work environment. Defendant contends that plaintiff's complaint fails to establish such a claim because Jean-Louis identifies only two isolated incidents of racial animosity. Def. Mem. 8-11.

To state a hostile work environment claim, a plaintiff must allege facts demonstrating either that "a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of h[is] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted). Cases in which a single incident was found to be sufficiently severe to support a hostile work environment claim include those where the plaintiff was physically assaulted. *See Patterson*, 375 F.3d at 230; *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995) (noting that "even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment"). In *Patterson*, the Second Circuit stated:

> Although a single incident ordinarily will not give rise to a cognizable claim for hostile work environment, this alleged event included not only racial remarks but also a physical assault in which Patterson was punched in the ribs and was temporarily blinded by having mace sprayed in his eyes. We cannot say that, as a matter of law, such an incident is not sufficiently severe . . . to create a hostile work environment. The matter of whether that incident occurred and whether it was of sufficient severity to alter the terms and conditions of Patterson's employment remain questions for a fact-finder.

Patterson, 375 F.3d at 230 (reversing the district court's dismissal of plaintiff's § 1981 claims

against one of the defendants involved in the incident).

Plaintiff's allegations that Zografos made a racial remark and physically assaulted him, considered in light of *Patterson*, are sufficient to support a racially hostile work environment claim. Plaintiff alleges that on or about April 13, 2007, Zografos, a white coworker, stated to Jean-Louis "My mother would never date a black guy. . ." and then punched plaintiff in the face ten or fifteen minutes later. Am. Compl. ¶¶ 29, 30. Jean-Louis also states that he sought medical treatment for the injuries he suffered when Zografos struck him. *Id*. ¶ 30. Moreover, plaintiff alleges, albeit vaguely, that he was "subject to continuous harassment and discrimination by American" throughout his employment, and in particular, while he worked at JFK airport.[7] *Id*. ¶ 20. Although the facts suggesting racial animosity are slim, I find that, when combined with the physical assault, they are sufficient to "nudge" plaintiff's hostile work environment claim "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Defendant also contends that it is just as likely that Zografos' actions were motivated by personal dislike as opposed to racial animus, and that plaintiff's allegations are therefore insufficient to state a hostile work environment claim. Def. Mem. 8 (citing *Gibson v. Brown*, 1999 WL 1129052, at *12 (E.D.N.Y. Oct. 19, 1999)). True, "[p]ersonal animosity is not the equivalent of . . . discrimination and . . . [a] plaintiff cannot turn a personal feud into a . . . discrimination case by accusation." *McCollum v. Bolger*, 794 F.2d 602, 609-10 (11th Cir. 1986), *cited with approval in Gibson*, 1999 WL

---

[7] In his memorandum in support of his motion, plaintiff repeatedly claims that Zografos called him a "nigger," *see*, *e.g.*, Pl. Mem. 2, 3, 6, but his complaint does not indicate that Zografos made such a remark, *see* Am. Compl. ¶¶ 17-42. Plaintiff also alleges in his memorandum that his accent was mocked. Pl. Mem. 6. Again, no such allegation is made in the proposed amended complaint.

1129052, at *12. However, defendant's contention, and its citations to *Gibson*, 1999 WL 1129052, and *Yusuf v. Vassar College*, 35 F.3d 709, 714 (2d Cir. 1994), are unpersuasive in light of the facts and the procedural posture of this case.

First, *Gibson* is easily distinguished because the plaintiff there, opposing a motion for summary judgment, failed to offer "*any* evidence to suggest that the criticism of her [job performance] constitute[d] a Title VII violation, or even that it was the product of animosity or a personal vendetta." *Gibson*, 1999 WL 1129052, at *12 (emphasis added). Here, plaintiff attributes a specific, identifiable racial statement to Zografos, and the pending motion seeks leave to amend a pleading, not to avoid summary judgment. *Cf. Trigg v. New York City Transit Auth.*, 2001 WL 868336, at *8 (E.D.N.Y. July 26, 2001) (dismissing *on summary judgment* plaintiff's discrimination claim and finding that the two comments at issue were simply "the isolated, sporadic and gender-related utterances of an intolerant, narrow-minded man"). Likewise, in *Yusuf*, the Second Circuit affirmed the dismissal of plaintiff's § 1981 claim, noting that plaintiff failed to allege "*any* specific factual support for his claim of a racial motivation." 35 F.3d at 714. Here, plaintiff has plead sufficient facts to support a claim of individual liability under § 1981 against Zografos. Whether or not he can muster enough facts to survive summary judgment is a question for another day.

I next turn to whether plaintiff has stated a claim for individual liability with respect to Gallo, plaintiff's supervisor. Plaintiff alleges that Gallo uttered a single racial remark – "get used to it, it's a white world" – during the limitations period. Generally, "a single or even a few racial epithets . . . would [not] suffice to create a hostile work environment." *Thomas v. New York City Health & Hosps. Corp.*, 2004 WL 1962074, at *12 (S.D.N.Y. Sept. 2, 2004)

(collecting cases). Nonetheless, "the Second Circuit regards expressions of racial hostility by an employee's supervisor as especially pernicious." *Id*. at *14. "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet . . . by a supervisor in the presence of his subordinates." *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) (internal quotation marks and citation omitted), *cited with approval in Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 571 (2d Cir. 2000); *see also Collier v. Boymelgreen Developers*, 2008 WL 835706, at *8 (E.D.N.Y. Mar. 28, 2008) (declining to dismiss a hostile work environment claim based on only a small number of racial remarks because "public use of racially derogatory terms, *particularly by a supervisor*, could interfere unreasonably with an employee's work performance") (emphasis added).

While Gallo's "white world" remark might not be sufficient, standing alone, to support a hostile work environment claim, the gravity of the remark is heightened not only by Gallo's position as plaintiff's supervisor but also by the context in which it was made. Accepting plaintiff's allegations as true, Gallo made the comment shortly after plaintiff had been assaulted by a white coworker and in response to plaintiff's report of the assault. Presumably, plaintiff reported the assault with the hope that, among other things, his employer would take some action to protect him from future attacks. Rather than assuring plaintiff that corrective action would be taken, however, Gallo essentially told plaintiff that, as a black man, he should get used to being assaulted or taken advantage of by white coworkers. Am. Compl. ¶ 31. Nor was this the first time, according to plaintiff, that Gallo made a racist remark; plaintiff alleges that, in or around September of 2000, Gallo called him a "nigger" in front of a coworker.[8] *Id.* ¶ 21.

---

[8] Although Gallo's alleged use of the term "nigger" took place outside of the statute of limitations period, it is relevant in considering whether there was a racially hostile work environment. *See Schwapp v. Town of Avon*, 118

Considering all of the circumstances and drawing all reasonable inferences in favor of plaintiff, I conclude that plaintiff has alleged sufficient facts to suggest that Gallo contributed to the creation of a racially hostile work environment. Accordingly, plaintiff's application for leave to add a § 1981 claim against Gallo is granted.

### 3. Discriminatory and Retaliatory Suspension and Termination

Plaintiff also seeks to add a § 1981 claim for discrimination and retaliation against Zografos and Gallo. As defendant contends, however, the complaint fails to allege any facts connecting Gallo's racial statement to plaintiff's suspension and termination. *See* Def. Mem. 10-11. Although plaintiff alleges in his proposed complaint that "Gallo had the power to terminate plaintiff's employment," Am. Compl. ¶ 31, he does not allege that Gallo was involved in any of the decisions by American to suspend and then terminate Jean-Louis' employment, *id.* ¶¶ 33-40. Because plaintiff fails to plead any facts connecting the adverse employment actions to Gallo, Jean-Louis fails to state a § 1981 discrimination claim against him. *See Howe v. Town of Hempstead*, 2006 WL 3095819, at *7-8 (E.D.N.Y. Oct. 30, 2006) (finding that racist comments were "stray remarks" that did not support an inference of discriminatory intent because they were not made by decision-makers or persons with influence over decision-makers).

In addition, Jean-Louis alleges that Gallo retaliated against plaintiff for complaining about the assault by Zografos.[9] Pl. Reply 4. Even drawing all reasonable inferences in favor of

---

F.3d 106, 111-12 (2d Cir. 1997) (holding that incidents of hostility aimed at other minorities and incidents that pre-dated plaintiff's employment may be considered in determining whether a hostile work environment existed).

In his Reply, plaintiff contends that he sufficiently pleads a claim against Gallo and states that he "has alleged that Gallo's words, and actions, over the years . . . resulted in an environment . . . racially hostile." Pl. Reply 4. Plaintiff's complaint, however, fails to include any other words or actions by Gallo that created such a hostile work environment. *See* Am. Compl. ¶¶ 17-42.

[9] In his Reply, plaintiff also alleges retaliation based on Gallo's disciplining of Jean-Louis for not wearing his uniform following plaintiff's report to human resources of Gallo's use of the word "nigger." Pl. Reply. 4. This alleged retaliation, however, appears to have occurred in 2000, *see* Am. Compl. ¶ 21, and would be outside the statute of limitations.

13

plaintiff, the proposed complaint, as noted above, lacks *any* facts connecting Gallo to plaintiff's suspension and termination. *See* Am. Compl. ¶¶ 17-42. I therefore conclude that the proposed amended complaint fails to state a § 1981 claim against Gallo for discrimination or retaliation.[10]

Plaintiff's complaint is at least as deficient in suggesting a connection between Zografos' conduct and the adverse employment action taken against Jean-Louis. A racial comment by Zografos, a co-worker, absent any allegation that Zografos was involved in any decision affecting plaintiff's employment, is insufficient to establish a § 1981 claim against Zografos for discriminatory or retaliatory termination. *See Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 309 (S.D.N.Y. 2000) (finding it "fatal" to plaintiff's claim that none of the racist remarks described in the complaint were made by a decision-maker). Although plaintiff was suspended as a result of his altercation with Zografos, plaintiff does not allege any involvement by Zografos in the employment actions taken by American. *See* Am. Compl. ¶¶ 29-40. For all these reasons, plaintiff's proposed § 1981 claims against Gallo and Zografos must be limited to the alleged hostile work environment.

In sum, the proposed amended complaint contains sufficient factual allegations "to plausibly suggest [defendants'] discriminatory state of mind" when making the statements and engaging in the conduct alleged by plaintiff to have resulted in a racially hostile work environment. *Iqbal*, 129 S. Ct. at 1952. Accordingly, plaintiff's motion to amend to add a § 1981 claim based on a racially hostile work environment against all defendants is granted. However, plaintiff's § 1981 retaliation and discriminatory termination claims are limited to defendant American. Finally, plaintiff may not include a § 1981 claim based on his national

---

[10] Some of the factual allegations in plaintiff's amended complaint lack even approximate dates that might suggest a causal connection between plaintiff's complaint about the assault and any retaliation. *See*, *e.g.*, Am. Compl. ¶¶ 23, 25, 26 (appearing to allege retaliation prior to the incident with Zografos based on plaintiff's earlier complaints of racism). Without a time frame for these events, it is not clear if these paragraphs are included to provide background facts or in an attempt to establish a viable claim.

origin.

### D. NYSHRL and NYCHRL

Plaintiff also moves to amend his claims for race, color, national origin, and sexual orientation discrimination and harassment under the NYSHRL and the NYCHRL to include claims against defendants Zografos and Gallo.[11] The first question is whether the NYSHRL and the NYCHRL permit individual liability. Second, I consider whether plaintiff pleads sufficient facts to establish each of these claims of discrimination and harassment.

#### 1. Individual Liability

"With respect to liability under state and city human rights laws, the Second Circuit [in *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995),] has held that individuals may be held liable, even though New York appellate divisions are split on the issue." *Doe*, 583 F. Supp. 2d at 450 (citing *Tomka*; *Steadman v. Sinclair*, 223 A.D.2d 392, (1st Dep't 1996) (holding that individuals can be held liable); *Trovato v. Air Express Int'l*, 238 A.D.2d 333 (2d Dep't 1997) (finding no coworker liability)). Despite the split in the New York state courts, "[m]ost of the federal courts in New York . . . have continued to follow *Tomka*." *Dantuono v. Davis Vision, Inc.*, 2009 WL 5196151, at *12 (E.D.N.Y. Dec. 29, 2009) (collecting cases). As *Tomka* is binding on this court, I follow it and hold that a claim asserting individual liability may be brought under the NYSHRL and the NYCHRL.

I find that plaintiff has sufficiently stated a claim for individual liability against Zografos and Gallo under the NYSHRL and the NYCHRL. Plaintiff has alleged facts that are adequate to state a hostile work environment claim, *see supra*, and has sufficiently pled that Zografos and

---

[11] In his proposed complaint, plaintiff also brings a retaliation claim in violation of the NYCHRL against all defendants. Am. Compl. ¶¶ 70-74. As discussed above, however, plaintiff fails to plead that Zografos and Gallo had any involvement in any alleged retaliation. *See* Am. Compl. ¶¶ 33-40. Accordingly, plaintiff's motion to include a NYCHRL retaliation claim against Zografos and Gallo is denied.

15

Gallo directly participated in creating a racially hostile work environment.[12] *See also Feingold v. N.Y.*, 366 F.3d 138, 158-59 (2d Cir. 2004) (reversing district court's grant of summary judgment on plaintiff's NYSHRL and NYCHRL claims in favor of individual defendants who created hostile work environment).

### 2. *National Origin Discrimination and Harassment*

Although plaintiff alleges that he is a member of a protected class, he fails to plead any facts suggesting that defendants discriminated against or harassed him on the basis of his Haitian origin. Am. Compl. ¶¶ 17-42. Thus, plaintiff's national origin discrimination claims are completely conclusory, are not entitled to a presumption of truth, and do not "plausibly suggest an entitlement to relief." *See Iqbal*, 129 S. Ct. at 1951. Accordingly, the aspect of plaintiff's motion for leave to amend that seeks to add defendants Zografos and Gallo to the fifth and sixth causes of action is denied.[13]

### 3. *Sexual Orientation Discrimination and Harassment*

Finally, plaintiff seeks to bring claims of discrimination and harassment based on sexual orientation, actual or perceived, under the NYSHRL and the NYCHRL against Zografos and Gallo. Am. Compl. ¶¶ 76-77, 79-80. A plaintiff alleging discrimination based on sexual orientation may prevail by showing that he was discriminated against either because he is gay or because he was perceived to be gay. *Rohn Padmore, Inc. v. LC Play Inc.*, 679 F. Supp. 2d 454, 461 n.3 (S.D.N.Y. 2010) (noting that both the NYSHRL and NYCHRL protect against discrimination based on an individual's perceived sexual orientation). Plaintiff does not allege

---

[12] Hostile work environment claims under Title VII, § 1981, NYSHRL and NYCHRL are all analyzed using the same standard. *See Citroner v. Progressive Cas. Ins. Co.*, 208 F. Supp. 2d 328, 339 (E.D.N.Y. 2002) (citing *Whidbee*, 23 F.3d at 69).

[13] I also note that plaintiff similarly fails to allege any facts suggesting that American discriminated against plaintiff on the basis of his national origin. American, however, did not move to dismiss these claims.

that he is gay, and instead appears to claim that he was discriminated against because he was perceived to be homosexual. Am. Compl. ¶ 76. Jean-Louis, however, fails to plead any facts even remotely suggesting that Gallo believed him to be gay or discriminated or harassed him on the basis of his actual or perceived sexual orientation. *Id*. ¶¶ 17-42, 76-80. Accordingly, plaintiff's application to include such a claim against Gallo is denied.

With respect to Zografos, the only allegation of sexual orientation harassment is that Zografos called him a "faggot" during their heated exchange. Am. Compl. ¶ 29. While the word "faggot" may be a pejorative term referring to a male homosexual, it is also commonly used as an insult directed at people believed by the person using the term to be heterosexual. For this reason, and because plaintiff does not allege any other facts indicating that Zografos believed Jean-Louis was a homosexual, I find plaintiff's allegations insufficient to support the inference that Zografos believed plaintiff to be gay. Accordingly, plaintiff has failed to plead facts that would support a hostile work environment claim based on his actual or perceived sexual orientation. Plaintiff's motion for leave to add sexual orientation claims under the NYSHRL and the NYCHRL is therefore denied.

## CONCLUSION

For all these reasons, plaintiff's motion for leave to file an amended complaint is granted in part and denied in part. Plaintiff is granted leave to file an amended complaint that includes claims based on a racially hostile work environment under § 1981, NYSHRL, and NYCHRL against Zografos and Gallo.[14] Plaintiff's application to add the following causes of action is denied: tortious interference with employment relations, negligent infliction of emotional distress, any § 1981 claims based on national origin, discriminatory or retaliatory suspension or

---

[14] In addition, and as noted earlier, defendant does not oppose amendment to add a § 1981 claim against American and thus this aspect of plaintiff's motion is also granted.

termination claims under § 1981 against Zografos and Gallo, hostile work environment claims under NYSHRL and NYCHRL based on national origin harassment, claims of a hostile work environment under NYSHRL and NYCHRL prohibiting discrimination on the basis of perceived or actual sexual orientation, and retaliation claims against Zografos and Gallo under NYSHRL and NYCHRL.

Plaintiff may file an amended complaint consistent with the rulings in this Order no later than August 13, 2010.

**So Ordered.**

_____s/_____
**Steven M. Gold**
**United States Magistrate Judge**

**July 30, 2010**
**Brooklyn, New York**

*U:\eoc 2010\jean-louis.docx*